RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3230-14T2
 A-3256-14T2

E.S.,

 Plaintiff-Respondent,

v.

H.A.,

 Defendant-Appellant.
_____________________________

E.S.,

 Plaintiff-Appellant,

v.

H.A.,

 Defendant-Respondent.
______________________________________________

 Argued February 28, 2017 – Decided August 15, 2017

 Before Judges Messano, Suter and Guadagno.

 On appeal from the Superior Court of New
 Jersey, Chancery Division, Family Part,
 Atlantic County, Docket No. FM-01-0562-09.

 Bruce P. Matez argued the cause for
 appellant in A-3230-14 and respondent in A-
 3256-14 (Borger Matez, PA, attorneys; Mr.
 Matez, on the briefs).
 Patricia A. Darden argued the cause for
 respondent in A-3230-14 and appellant in A-
 3256-14 (Law Offices of Patricia A. Darden,
 attorneys; Ms. Darden, on the briefs).

 The opinion of the court was delivered by

MESSANO, P.J.A.D.

 Plaintiff E.S. and defendant H.A. are the parents of R.A.

(Richard), born in 2004.1 The parties separated in December

2008, and after a contentious period during which plaintiff

alleged acts of domestic violence (DV), and defendant

successfully litigated against her claims, the marriage ended in

a consent judgment of divorce (JOD) filed on September 8, 2009.

The parties were unable to resolve issues of custody and

parenting time prior to entry of the JOD.

 Earlier in 2009, plaintiff had contacted the Division of

Child Protection and Permanency (DCPP or the Division) regarding

Richard's inappropriate, overtly sexual behavior. The Division

began to investigate whether defendant had sexually abused

Richard. In April 2009, the parties entered into a consent

order in the matrimonial action that restored defendant's

parenting time, which had been suspended during the DV

proceedings. However, a subsequent domestic violence complaint

1
 We use initials and pseudonyms to maintain the confidentiality
of the parties and their child.

 2 A-3230-14T2
resulted in a temporary restraining order and renewed suspension

of defendant's parenting time.

 When the court dismissed the last of plaintiff's domestic

violence complaints following a multi-day trial that also ended

in September 2009, plaintiff thereafter successfully sought an

order to show cause temporarily suspending defendant's parenting

time until the judge could review the Division's records

regarding its investigation. On October 5, 2009, after

completing her review, the judge dissolved any restraints and

ordered resumption of defendant's parenting time in accordance

with the April 2009 order.

 On November 10, 2009, the Division advised defendant its

"investigation determined that abuse was substantiated for

sexual molestation with regard to [Richard]," and that "[y]ou

have been identified as a person responsible for the abuse."

Defendant apparently sought an administrative appeal because, on

February 19, 2010, the Division advised him the "finding of

abuse" as to one incident, July 27, 2009, was overturned.

However, the Division's finding of abuse as to a second incident

on July 6, 2009, remained in place. Defendant filed a request

for further review before the Office of Administrative Law

(OAL).

 3 A-3230-14T2
 Meanwhile, plaintiff sought reconsideration of the denial

of her earlier request to suspend all parenting time. By July

2010, the OAL hearing still had not taken place, nor had the

Division initiated a Title 9 or Title 30 action. The Family

Part judge overseeing the matrimonial action entered an order

setting a plenary hearing for October "on the issue . . .

whether it is in the best interests of . . . [Richard] that

parenting time with his father . . . should resume."

 No hearing took place, as issues and disputes continued to

arise regarding expert witnesses. In January 2011, the judge

appointed Dr. Jennifer L. Perry, Psy.D., as the court's expert,

and charged her with evaluating "when and in what manner it

w[ould] be in the best interest of . . . [Richard] to resume

parenting time with his father . . . ." The parties' litigious

conduct continued; it is unnecessary to detail the reasons for,

or results of, various court appearances that followed.

 In a February 2012 order, the judge provided copies of Dr.

Perry's reports to counsel, and the parties again appeared

before the court on April 2, 2012. Although the order entered

that day indicates the judge took "sworn testimony," there was

no testimony. After listening to the arguments of counsel, the

judge prohibited defendant "from any and all contact with"

Richard, "with the exception of the supervised visitation with

 4 A-3230-14T2
Dr. Perry or any other visitation ordered by th[e] court." The

judge permitted the parties to engage in discovery and set new

dates for a plenary hearing in July 2012.

 In May 2012, defendant withdrew his administrative appeal

of the Division's substantiated finding of abuse. No plenary

hearing took place during the summer of 2012. In November, a

different Family Part judge took over the litigation, and a

plenary hearing began in January 2013 and continued on non-

consecutive days until May. The parties thereafter submitted

written proposed factual findings and legal conclusions.

 On November 22, 2013, the judge issued an oral opinion on

the record explaining the reasons supporting his order filed

that day (the November 2013 order). The record reflects only

defense counsel was present; plaintiff's counsel had a court

appearance in another county, was running late and the judge

decided not to wait.

 The judge found by clear and convincing evidence, that

defendant had sexually abused Richard. The order granted

plaintiff sole legal and physical custody of Richard and denied

defendant parenting time. Section 3 of the order required that,

before making any application for parenting time, defendant

 shall comply with the requirements set forth
 by Dr. Jennifer Perry in her testimony,
 which include:

 5 A-3230-14T2
 a. Admission of wrongdoing;
 b. A psycho-sexual evaluation by
 a professional specializing in
 same; and
 c. Individual therapy.

In Section 4, the order further provided that, "[i]f and when

the [d]efendant completes the aforementioned requirements, he

may apply for consideration of parenting time through

Therapeutic Management of Reunification (TMR)."2

 In his oral opinion denying both parties' requests for

counsel fees, the judge noted plaintiff's counsel's request was

"vague," and he did not "know whether she's going to do

something. Some post judgment motion probably . . . ." The

November 2013 order simply denied both parties' requests for

counsel and expert fees.

 Plaintiff sought reconsideration, asking the order

specifically include the judge's finding that defendant had

sexually abused his son, and modifying the order to clarify that

her request for fees was denied without prejudice. The judge

granted the motion for reconsideration and entered the January

10, 2014 order (the January 2014 order) that stated defendant

"sexually abused" Richard, and denied plaintiff's request for

2
 TMR was described at trial as a visitation modality, utilizing
a "progression" of steps aimed at "rebuilding rapport" between
Richard and defendant.

 6 A-3230-14T2
fees without prejudice.3 The January 2014 order reiterated the

requirements of the November 2013 order imposing preconditions

on defendant's future applications for parenting time.

 Plaintiff submitted a request for fees. Defendant's

opposition never asserted an inability to pay. Rather,

defendant claimed plaintiff was solely responsible for the

plenary hearing, because she refused to accept Dr. Perry's

initial recommendation of TMR. Defendant asserted the "proper

forum for this case should have been . . . a proceeding

initiated by the Division."4

 After conducting a hearing, the judge rendered an oral

opinion and memorialized it in his June 9, 2014 order (the June

2014 order), requiring defendant to pay plaintiff $60,000 in

attorney fees and $2488 in costs in monthly installments of

$10,000. The order further provided that "these fees and costs

shall not be dischargeable in bankruptcy."

3
 It would appear from the order itself that defendant did not
oppose the motion for reconsideration, and defendant's appendix
does not include any opposition, if indeed any was filed.
4
 However, the record reveals that prior to the plenary hearing,
defense counsel urged the judge not to accept the substantiated
finding of abuse as dispositive of the issue. Because we are
rejecting the arguments defendant now raises and affirming the
judge's order in most respects, we choose not to address a
specific argument raised in plaintiff's opposition, i.e., that
defendant's "abandonment of his administrative law appeal is
fatal . . . to his attempts to overturn the finding that he
sexually abused" Richard.

 7 A-3230-14T2
 Defendant moved for reconsideration and plaintiff cross-

moved to enforce the award. In his certification, defendant,

for the first time, asserted an inability to pay counsel fees

awarded to plaintiff. The judge's August 29, 2014 order (the

August 2014 order) granted defendant's motion in part, reducing

the monthly installments to $500, but denying all other relief.

The judge denied plaintiff's request for counsel fees in

opposing the motion.

 Plaintiff filed another motion for reconsideration, seeking

an order reducing the counsel fee award to judgment, as well as

an award of additional fees for making the motion. Defendant

cross-moved, seeking a stay of the award and counsel fees for

opposing the motion. The judge's February 4, 2015 order (the

February 2015 order) denied plaintiff's motion and granted

defendant's motion in part, awarding him $2520 in counsel fees

as an offset against the award previously made in favor of

plaintiff.

 In A-3230-14, defendant appeals the November 2013 order

that followed the hearing; the January 2014 order that granted

plaintiff's motion for reconsideration and added additional

terms to the original order; the June 2014 order awarding

plaintiff counsel fees; and the August 2014 order largely

denying his request for reconsideration of the fee award.

 8 A-3230-14T2
 In A-3256-14, plaintiff appeals from the August 2014 order

reconsidering the fee award and the February 2015 order denying

her motion for reconsideration. We calendared the cases back-

to-back, and now consolidate them for purposes of issuing a

single decision.

 In A-3230-14, we reverse those provisions of the November

2013 and January 2014 orders that required defendant to "comply

with [certain] requirements" "[p]rior to" making "any

application for parenting time" with his son, but otherwise

affirm. We affirm in A-3256-14.

 As to A-3230-14

 I.

 In Point I of his brief, defendant contends the judge based

his finding of abuse upon inadmissible hearsay, specifically

statements Richard made to plaintiff, his sister, C.C. (Carol),

and his therapist, Susan Mullen, as well as audio recordings

plaintiff made of conversations with her son. He also argues

the testimony of Richard's treating social workers, Mullen and

Donald Cohen, was privileged or otherwise inadmissible.

Defendant contends the judge erroneously relied upon the expert

testimony of Perry, and Amy Hoch, Psy.D., a psychiatrist to whom

the Division first referred Richard for evaluation. Defendant

also argues the judge erred by admitting evidence from plaintiff

 9 A-3230-14T2
and Carol in the nature of prior bad acts, in violation of

N.J.R.E. 404(b). None of these arguments justify reversal.

 "When a trial court admits or excludes evidence, its

determination is 'entitled to deference absent a showing of an

abuse of discretion, i.e., [that] there has been a clear error

of judgment.'" Griffin v. City of E. Orange, 225 N.J. 400, 413

(2016) (quoting State v. Brown, 170 N.J. 138, 147 (2001)).

"Thus, we will reverse an evidentiary ruling only if it 'was so

wide [of] the mark that a manifest denial of justice resulted.'"

Ibid. (quoting Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492

(1999)).

 N.J.R.E. 803(c)(27) provides:

 A statement made by a child under the age of
 12 relating to sexual misconduct committed
 with or against that child is admissible in
 a criminal, juvenile, or civil proceeding if
 (a) the proponent of the statement makes
 known to the adverse party an intention to
 offer the statement and the particulars of
 the statement at such time as to provide the
 adverse party with a fair opportunity to
 prepare to meet it; (b) the court finds, in
 a hearing conducted pursuant to Rule 104(a),
 that on the basis of the time, content and
 circumstances of the statement there is a
 probability that the statement is
 trustworthy; and (c) either (i) the child
 testifies at the proceeding, or (ii) the
 child is unavailable as a witness and there
 is offered admissible evidence corroborating
 the act of sexual abuse . . . .

 10 A-3230-14T2
We apply the same differential standard of review to the judge's

decision admitting evidence under this Rule. State v. P.S., 202

N.J. 232, 250-52 (2010). Routinely, the trial court should hold

a hearing pursuant to N.J.R.E. 104 to determine whether such

evidence is sufficiently reliable and trustworthy for admission.

Id. at 248-49.

 Here, the judge conducted a Rule 104 hearing primarily

focused on issues of authenticity regarding the recordings. See

N.J.R.E. 901. However, after hearing plaintiff's testimony

about the recordings, and recognizing Hoch's earlier testimony,

the judge specifically concluded Richard's statements contained

in the recordings were trustworthy. The record does not reflect

any lack of notice regarding the recordings, which were cited in

reports supplied to defendant in discovery, nor did defendant

ever object at trial on the grounds that Richard was available

as a witness.5

 Defendant never sought a separate Rule 104 hearing about

Richard's statements to plaintiff, Carol or Mullen before their

testimony. Any argument now raised about the need to hold a

5
 Indeed, defense counsel noted Richard was available to testify.
Even when hearsay testimony implicates constitutional rights, a
defendant bears the burden to object in the first instance.
State v. Williams, 219 N.J. 89, 99 (2014), cert. denied, ___
U.S. ___, 135 S. Ct. 1537, 191 L. Ed. 2d 565 (2015) (citation
omitted).

 11 A-3230-14T2
Rule 104 hearing must be reviewed as plain error. See R. 2:10-2

(error "of such a nature as to have been clearly capable of

producing an unjust result").

 We have recognized that a party may choose not to request

such a hearing for purely tactical reasons. See State v. W.L.,

292 N.J. Super. 100, 113 (App. Div. 1996). More importantly,

defendant has "failed to articulate any prejudice resulting from

the court's alleged dereliction in this non-jury proceeding."

State in re S.M., 284 N.J. Super. 611, 621 (App. Div. 1995).

The failure to hold a hearing was not plain error.

 Moving from defendant's procedural arguments to his

substantive claims, the record reflects defendant rarely, if

ever, objected during the testimony of plaintiff and Mullen

regarding statements attributed to Richard.6 In this case, as in

S.M., "the court's findings at the conclusion of th[e] trial"

make "clear that the court was fully aware of its responsibility

to determine trustworthiness[.]" S.M., supra, 284 N.J. Super.

at 621. As a result, we reject defendant's arguments that the

admission of Richard's statements to others was reversible

error.

6
 The judge never referenced Carol's very limited testimony
regarding Richard's statements. We discuss below Carol's very
limited testimony regarding defendant's alleged behavior.

 12 A-3230-14T2
 Defendant's contention that the judge erroneously permitted

the admission of other "bad act" evidence in violation of

N.J.R.E. 404(b) is also unavailing. Carol testified that

defendant partially exposed his buttocks to her while she was in

the bathroom, but, in rendering his oral decision, the judge

simply said, "I don't really know what to make of that, if it

occurred," and concluded that even if it had occurred, the event

was not "in the same category of issues that we're dealing

with."

 Defendant argues the judge should have excluded plaintiff's

testimony about allegations of domestic violence and marital

problems. However, although defendant objected early in the

testimony, the judge overruled the objection, specifically

noting that defense counsel's opening asserted plaintiff's

domestic violence allegations, like the allegations of sexual

abuse, were contrived in an attempt to alienate Richard's

affections for his father. While that may not have otherwise

justified the admission of evidence that was marginally relevant

to the best interest analysis, we are certain the limited amount

of evidence played little role in the judge's decision, and any

error was harmless.

 Defendant next argues the judge should have excluded

Cohen's and Mullen's testimony under N.J.R.E. 518 and N.J.S.A.

 13 A-3230-14T2
45:15BB-13. He also argues Mullen's testimony was inadmissible

opinion testimony under N.J.R.E. 701 and the admission of her

therapy session notes was improper. We again disagree.

 N.J.S.A. 45:15BB-13, codified in our evidence rules as

N.J.R.E. 518, prohibits a social worker from disclosing

"confidential information" "acquired from a client or patient"

except in certain circumstances, including when the client or

patient waives the privilege. N.J.R.E. 518(e). If more than

one person in a family is "receiving social work services," each

member must agree to the waiver.

 Here, defendant never asserted privilege at trial, and our

review of Cohen's testimony clearly indicates he related no

confidential information received from defendant. In his brief,

defendant's argument regarding Mullen is limited to her

conversations with Richard. Defendant cites no authority that

supports his ability to vicariously assert a privilege on

Richard's behalf. Moreover, plaintiff, as Richard's mother and

the custodial parent, seemingly was in equal position to waive

any privilege. Defendant fails to address any of these issues

in his brief.

 Moreover, a waiver is not required when the "[f]ailure to

disclose the information presents a clear and present danger to

the health or safety of an individual[.]" N.J.S.A. 45:15BB-

 14 A-3230-14T2
13(b); N.J.R.E. 518(b). Since defense counsel made no

objection, the judge never addressed this issue. However, we

recognize, as did the judge, that the polestar for any best

interest custody decision "is the safety, happiness, physical,

mental and moral welfare of the child." Kinsella v. Kinsella,

150 N.J. 276, 317 (1997) (quoting Fantony v. Fantony, 21 N.J.

525, 536 (1956)). Given the nature of this case, the judge very

well might have authorized disclosure over any objection.

 Defendant's other arguments regarding Mullen's testimony do

not persuade us to reverse. The judge carefully required the

redaction of Mullen's notes to include only those incorporated

in Mullen's testimony during trial; any error in admitting the

written notes was harmless.7 We agree with defendant that the

judge permitted Mullen to give expert opinion testimony, most

importantly that Richard displayed behaviors consistent with

having been abused. The record reflects a standing objection

from defense counsel that Mullen was providing expert testimony.

Plaintiff's counter argument that Mullen's testimony was

permissible lay opinion testimony is meritless.

7
 Defendant's appendix includes all of Mullen's notes, nearly
three years' worth, without any redactions. We assume the
redacted version of the notes admitted complied with the judge's
instructions. Defendant's argument that admission of Mullen's
CV was prejudicial lacks any merit. R. 2:11-3(e)(1)(E).

 15 A-3230-14T2
 However, the judge noted defendant was well aware of

Mullen's involvement in the case and her opinions. He observed

that defendant failed to depose Mullen and therefore could not

claim surprise. Much of Mullen's testimony was factual in

nature, describing the various therapy sessions with Richard,

and clearly admissible.

 More importantly, based on her education, training and

experience, Mullen could have been qualified as an expert, had

plaintiff offered her as such. In addition, Hoch, who was

qualified and questioned as an expert, opined that some of

Richard's developmentally inappropriate behavior was "rarely

seen in children not exposed to some sort of sexual behavior or

stimuli." The limited admission of Mullen's expert opinion

testimony over defendant's objection does not compel reversal.

 Finally, defendant's arguments regarding the testimony of

Hoch and Perry lack sufficient merit to warrant discussion in a

written opinion. R. 2:11-3(e)(1)(E).

 II.

 A.

 In Point II, defendant argues the provisions of the

November 2013 and January 2014 orders requiring his admission of

"wrongdoing" "[p]rior to" making "any application for parenting

time" violate his constitutional right against self-

 16 A-3230-14T2
incrimination. As a corollary argument, defendant claims the

judge erred in relying on Hoch's and Perry's opinions that his

admission of wrongdoing was a necessary predicate to TMR,

because they were "net" opinions unsupported by any indicia of

scientific reliability. In response, plaintiff only contends

defendant failed to raise the issue in the trial court, and

Richard's best interests require defendant's admission of abuse

before TMR can commence.

 Preliminarily, defendant's claim that the opinions

expressed by Hoch and Perry were net opinions lacks sufficient

merit to warrant discussion. R. 2:11-3(e)(1)(E). Defendant

also suggests Perry never conditioned parenting time, or

initiation of TMR, upon his admission of wrongdoing. However,

in responding to a question from the judge, Perry said:

 I would say that if . . . Your Honor
 determines that sexual abuse has occurred
 and a perpetrator is not willing to admit to
 that and get the services needed in order to
 prevent that — or reduce the likelihood of
 that occurring again, . . . there should be
 no visitation.

 Plaintiff is correct that defendant never raised a

constitutional challenge to conditioning future applications for

parenting time upon an admission of wrongdoing, and we

 adhere[] to th[e] long-standing principle[]
 . . . 'that our appellate courts will
 decline to consider questions or issues not
 properly presented to the trial court when

 17 A-3230-14T2
 an opportunity for such a presentation is
 available unless the questions so raised on
 appeal go to the jurisdiction of the trial
 court or concern matters of great public
 interest.'

 [State v. Robinson, 200 N.J. 1, 20 (2009)
 (quoting Nieder v. Royal Indem. Ins. Co., 62
 N.J. 229, 234 (1973)).]

"However, if the issue is of special significance to the

litigant, to the public, or to the achievement of substantial

justice, and the record is sufficiently complete to permit its

adjudication, we may consider it." Borough of Keyport v.

Maropakis, 332 N.J. Super. 210, 216 (App. Div. 2000); see also

Ricci v. Ricci, 448 N.J. Super. 546, 567 (App. Div. 2017)

(considering constitutional challenge to Family Part's award of

college costs because "clarification of the law is necessary");

J-M Mfg. Co. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 458

(App. Div. 2015) (considering argument raised for the first time

on appeal regarding application of the entire controversy

doctrine to be "of sufficient importance to merit discussion"),

certif. denied, 224 N.J. 527 (2016). "[T]he Nieder rule's

exceptions are most fruitfully applied where the focal issue is

entirely a question of law, in respect of which lower court

determinations are accorded limited deference." Am. Civil

Liberties Union of N.J. v. Cty. of Hudson, 352 N.J. Super. 44,

72 (App. Div. 2002). For the following reasons, we relax

 18 A-3230-14T2
Nieder's restrictions and consider defendant's constitutional

arguments.

 The issue defendant now raises is of significant importance

to defendant, his son and other potential litigants in cases of

this nature. As we said nearly twenty years ago:

 This case is an example of a tragic but
 recurring dilemma in certain family court
 cases involving allegations of child sexual
 abuse. On the one hand, there are clearly
 cases of imagined or even fabricated charges
 against a parent, especially when raised
 during the pendency of divorce proceedings.
 For a parent to stand accused of such an
 offense is devastating both to that
 individual, and to the child's lifelong
 relationship with the parent. On the other
 hand, proof of such abuse, especially
 involving a very young child, is rarely
 clear, and the potential danger to a child
 from a reoccurrence, if the suspicions and
 accusations are well-founded, is enormous.

 [P.T. v. M.S., 325 N.J. Super. 193, 198
 (App. Div. 1999).]

Further, although the issue at trial was whether and under what

conditions should defendant's parenting time be restored, it is

entirely unclear whether defendant had an opportunity to address

potential judicially-imposed pre-conditions to any future

request he might make. Defendant might have properly moved for

reconsideration, but his failure to do so should not bar our

consideration of this significant issue. Moreover, the record

is complete, because both Hoch and Perry testified at length,

 19 A-3230-14T2
were subject to extensive cross-examination and defendant

eschewed any opportunity to present his own expert on the

subject of TMR or any necessary preconditions. Lastly, whether

the provisions violate defendant's constitutional rights raises

a purely legal issue, and even if the trial judge were afforded

the opportunity to consider the argument, we would review his

decision de novo. Motorworld, Inc. v. Beckendorf, 228 N.J. 311,

329 (2017).

 As a result, we move to the substance of defendant's

arguments.

 B.

 Our courts have long recognized "[t]he right of a parent to

raise a child and maintain a relationship with that child,

without undue interference by the state, is protected by the

United States and New Jersey Constitutions." N.J. Div. of Youth

& Family Servs. v. E.P., 196 N.J. 88, 102 (2008) (citations

omitted). Our court has held that "a parent's rights to the

care and companionship of his or her child are so fundamental as

to be guaranteed protection under the First, Ninth and

Fourteenth Amendments of the United States Constitution." Wilke

v. Culp, 196 N.J. Super. 487, 496 (App. Div. 1984), certif.

denied, 99 N.J. 243 (1985); see also N.J.S.A. 9:2-4 (declaring

it to be the State's public purpose "to assure minor children of

 20 A-3230-14T2
frequent and continuing contact with both parents after the

parents have separated or dissolved their marriage").

Therefore, "the law favors visitation and protects against the

thwarting of effective visitation[.]" Wilke, supra, 196 N.J.

Super. at 496.

 "That fundamental parental right, however, is not without

limitation. The State has a basic responsibility, as parens

patriae, to protect children from serious physical and

psychological harm, even from their parents." E.P., supra, 196

N.J. at 102 (citation omitted). A parent's custody or

visitation "rights may be restricted, or even terminated, where

the relation of one parent (or even both) with the child cause

emotional or physical harm to the child, or where the parent is

shown to be unfit." Wilke, supra, 196 N.J. Super. at 496.

 "New Jersey's privilege against self-incrimination,

although not enshrined in the State Constitution, is deeply

rooted in this State's common law and codified in both statute

and an evidence rule[,]" State v. Muhammad, 182 N.J. 551, 567

(2005), and "offers broader protection than its federal

counterpart under the Fifth Amendment." Id. at 568. Pursuant

to N.J.S.A. 2A:84A-19, and its equivalent, N.J.R.E. 503, every

person in New Jersey "has a right to refuse to disclose in an

 21 A-3230-14T2
action . . . any matter that will incriminate him or expose him

to penalty . . . ."

 [A] matter will incriminate (a) if it
 constitutes an element of a crime against
 this State, or another State or the United
 States, or (b) is a circumstance which with
 other circumstances would be a basis for a
 reasonable inference of the commission of
 such a crime, or (c) is a clue to the
 discovery of a matter which is within
 clauses (a) or (b) above; provided, a matter
 will not be held to incriminate if it
 clearly appears that the witness has no
 reasonable cause to apprehend a criminal
 prosecution. . . .

 [N.J.S.A. 2A:84A-18; N.J.R.E. 502.]

Although the orders under review do not define the necessary

prerequisites of defendant's admission of wrongdoing, based upon

the evidence at trial and the judge's factual findings and

conclusions, it can be presumed that defendant would have to

admit he sexually assaulted Richard. See N.J.S.A. 2C:14-2(b)

(defining sexual assault as sexual contact between a victim less

than thirteen years of age by an actor at least four years

older). A prosecution for a violation of N.J.S.A. 2C:14-2(b)

may be commenced at any time. N.J.S.A. 2C:1-6(a)(1). As a

result, defendant's admission of "wrongdoing," whenever made,

potentially exposes him to criminal liability.

 "Both the United States Supreme Court and our New Jersey

courts have consistently held that the state may not force an

 22 A-3230-14T2
individual to choose between his or her Fifth Amendment

privilege and another important interest because such choices

are deemed to be inherently coercive." State v. P.Z., 152 N.J.

86, 106 (1997). It does not matter whether the particular

proceeding is itself a criminal prosecution. See ibid.

(collecting cases). Rather, "the Fifth Amendment is violated

'when a State compels testimony by threatening to inflict potent

sanctions unless the constitutional privilege is surrendered.'"

Id. at 106-07 (quoting Lefkowitz v. Cunningham, 431 U.S. 801,

805, 97 S. Ct. 2132, 2135, 53 L. Ed. 2d 1, 7 (1977)).

 In P.Z., the Court considered "whether a caseworker from

the [Division] must give Miranda warnings to a parent prior to a

non-custodial interview related to a child abuse investigation."

Id. at 92. The defendant acknowledged he was not in custody at

the time, id. at 102, but argued "his statement was obtained in

a similarly coercive manner because he was faced with an implied

threat that his children would not be returned unless he

admitted responsibility for his youngest daughter's injuries."

Id. at 107.

 Citing two out-of-state decisions, which we discuss below,

the Court concluded, "Although an admission of abuse may aid in

the rehabilitative process, termination of custody is not

automatic on invocation of the privilege. We therefore consider

 23 A-3230-14T2
inapplicable those cases holding unconstitutional a requirement

that an individual choose between the right to remain silent and

another vital interest." Id. at 108. The Court recognized a

distinction between a "direct threat" to a vital interest or a

"previously held benefit" and, "instead, a possibility that

therapeutic outcomes will be determinative of parental rights."

Ibid. It explained:

 [The defendant] was not asked to choose
 between his children and the exercise of his
 right to remain silent. If he abused his
 daughter, and if he refused to acknowledge
 his acts of abuse, he would find it
 difficult to demonstrate that he could care
 for his children without harming them. This
 was the risk he faced. [The Division's
 caseworker] did not threaten him with
 termination of his parental rights if he did
 not confess; nor did she tell him that the
 only way he could get his children back was
 to confess. We conclude that [the]
 defendant's statement . . . was not coerced
 in violation of his Fifth Amendment
 privilege against self-incrimination.

 [Id. at 209.]

 Here, however, the orders directly threaten defendant's

parental rights, because defendant may not petition the Family

Part for modification unless and until he waives his privilege

against self-incrimination and admits "wrongdoing." The

decisions of several of our sister states have explained the

distinction drawn by the Court in P.Z., between compelled self-

incrimination — in violation of constitutional rights — and

 24 A-3230-14T2
incriminatory statements that might be necessary for meaningful

reunification therapy to begin.

 In In re Welfare of J.W., 415 N.W.2d 879, 880-81 (Minn.

1987), a case cited by the P.Z. Court, the defendant-parents

challenged a dispositional order that required them to undergo

psychological evaluations, which included explanation of the

circumstances that led to the death of a two-year old child in

their care. The State threatened to terminate their parental

rights if they would not agree. Id. at 881. The parents

objected claiming the order violated their constitutional right

against self-incrimination. Ibid. The court concluded "that

the trial court's order, to the extent it requires appellants to

incriminate themselves, violates appellants' Fifth Amendment

rights and is unenforceable." Id. at 883. However, the court

made clear the limits of the parents' privilege:

 While the state may not compel therapy
 treatment that would require appellants to
 incriminate themselves, it may require the
 parents to otherwise undergo treatment.
 Therapy, however, which does not include
 incriminating disclosures, may be
 ineffective; and ineffective therapy may
 hurt the parents' chances of regaining their
 children. These consequences lie outside
 the protective ambit of the Fifth Amendment.

 . . . .

 . . . In the lexicon of the Fifth
 Amendment, the risk of losing the children
 for failure to undergo meaningful therapy is

 25 A-3230-14T2
 neither a "threat" nor a "penalty" imposed
 by the state. It is simply a consequence of
 the reality that it is unsafe for children
 to be with parents who are abusive and
 violent.

 [Id. at 883-84.]

 The Vermont Supreme Court reached a similar conclusion in

In re M.C.P., 571 A.2d 627 (Vt. 1989), another case cited by the

P.Z. Court. There, the trial court ordered continued custody of

the minor with the child welfare agency "until the parents g[ot]

over the extreme denial of any abuse and seek counseling to

overcome these problems . . . ." Id. at 640. Adopting the

analysis of the court in J.G.W., the court concluded that

portion of the dispositional order "may be read as a requirement

that the parents waive their Fifth Amendment Privilege," and

then struck that provision from the order. Id. at 641. The

court explained:

 The trial court cannot specifically require
 the parents to admit criminal misconduct in
 order to reunite the parents to admit
 criminal misconduct in order to reunite the
 family. On the other hand, the parents must
 demonstrate to the court that it is in the
 juvenile's best interest to return custody
 to the parents in the face of the serious
 misconduct the court found they engaged in.
 While the court may not specify that the
 only route to reunification is an
 abandonment of the self-incrimination right,
 the parents must expect that the court and
 [the child welfare agency] will act based on
 the findings of extreme parental abuse. If
 the parents can find a way to show that they

 26 A-3230-14T2
 have become good parents, without admitting
 to any misconduct, and that a restoration of
 custody of the juvenile to them is in the
 best interest of the child and is safe, the
 court may not foreclose the option. If the
 court finds in the future, however, that the
 parents have made no progress to
 reunification because their denial prevents
 effective therapy, it may act on that
 finding to the parents' detriment without
 offending the Fifth Amendment privilege.

 [Ibid.; accord Mullin v. Phelps, 647 A.2d
 714, 724-25 (Vt. 1994).]

 Most courts around the country have recognized the

distinction between a court-compelled waiver of a parent's right

against self-incrimination, which violates the Fifth Amendment,

and an order compelling a parent's participation in counseling

or reunification services, the success of which might hinge on

the admission of abuse. See, e.g., In re A.W., 896 N.E.2d 316,

326 (Ill. 2008) ("[A] trial court may order a service plan that

requires a parent to engage in effective counseling or therapy,

but may not compel counseling or therapy requiring the parent to

admit to committing a crime."); In the Interest of C.H., 652

N.W.2d 144, 150 (Iowa 2002) ("The State may require parents to

otherwise undergo treatment, but it may not specifically require

an admission of guilt as part of the treatment."); Minh T. v.

Ariz. Dep't of Econ. Sec., 41 P.3d 614, 618 (Ariz. Ct. App.

2001) (recognizing "a distinction between a treatment order that

requires parents to admit criminal misconduct and one that

 27 A-3230-14T2
merely orders participation in family reunification services");

State v. Suzette M. (In re Clifford M.), 577 N.W.2d 547, 558-59

(Neb. Ct. App. 1998) (reversing termination of parental rights

"solely because [the defendant] refused to waive her right to be

free from self-incrimination," but recognizing court may order

enrollment in therapy as "essential to a particular parent's

rehabilitation"), appeal dismissed, 606 N.W.2d 742 (Neb. 2000).

 No reported New Jersey decision has squarely addressed this

issue,8 and we find the cited out-of-state decisions to be

persuasive. Here, the November 2013 and January 2014 orders

conditioned any future request by defendant for parenting time

upon his admission of "wrongdoing," which we presume, based on

Perry's testimony, means defendant must admit that he sexually

abused Richard. Such a requirement compels defendant to waive

his privilege against self-incrimination and violates his rights

under the Fifth Amendment and our State Constitution.

8
 In In re Guardianship of D.J.M., 325 N.J. Super. 150, 151 (Ch.
Div. 1999), the Family Part considered "whether to stay a
guardianship proceeding pending the outcome of a simultaneous
criminal proceeding arising out of the same facts." While
finding the defendant's Fifth Amendment arguments to be
"compelling," the court concluded the child's interest in
permanency outweighed the defendant's rights, and suggested the
Legislature should grant "use immunity" to parents in the
defendant's position. Id. at 162. Because the issues in this
case are significantly different, we express no opinion about
the court's holding in D.J.M.

 28 A-3230-14T2
 Although defendant has not specifically challenged the

balance of the November 2013 and January 2014 orders that impose

other preconditions upon him "[p]rior to any application for

parenting time," and further provide he may apply "for

consideration of parenting time" only if he completes these

requirements, we conclude these portions of the orders must also

be vacated.

 In Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div.

2010), we recognized that a citizen's constitutional right to

access to the courts applied to matters in the Family Part.

While reaffirming the court's inherent power "to control the

filing of frivolous motions and to curtail 'harassing and

vexatious litigation,'" ibid. (quoting Rosenblum v. Borough of

Closter, 333 N.J. Super. 385, 387, 391 (App. Div. 2000)), we

nevertheless reversed the judge's order enjoining the plaintiff-

father from filing any future motions, including enforcement of

parenting time requests, unless the parties and their attorneys

first conducted a settlement conference. Id. at 44. We

concluded that "in the absence of any finding of a need to

control baseless litigation, the balance struck by the motion

judge in favor of restricting access to the court was an abuse

of discretion." Id. at 51.

 29 A-3230-14T2
 We reach the same conclusion here. Undoubtedly, this

litigation has been protracted, contentious and, on occasion,

unnecessary. However, defendant has consistently denied that he

abused his son, and so testified at trial. Clearly, the judge

rejected this testimony and found, by clear and convincing

evidence, that defendant had sexually abused Richard. The judge

also clearly accepted Perry's testimony that not only was

defendant's admission of wrongdoing a necessary precondition to

effective therapy and future parenting time, but also that

defendant must undergo individual therapy and submit to a

psycho-sexual evaluation before the process can begin.

 Putting aside preconditioning any application of

defendant's admission of wrongdoing, which, as explained above,

violated defendant's constitutional rights, we conclude

imposition of these other preconditions violated defendant's

right to invoke the equitable powers of the Family Part to

modify its order denying him any parenting time. It may well be

that any future application may fail, absent defendant's efforts

to address the very issues Perry saw as vital to the gradual

reinstitution of parenting time. However, the court should not

reach that conclusion in advance of such a request. Although

the judge undoubtedly made a good faith attempt to foreclose

unnecessary motion practice in what had been an excessively

 30 A-3230-14T2
litigated case, these provisions of the November 2013 and

January 2014 orders improperly restrict defendant's right to

seek further review by the court.

 We vacate Section 3 and 4 of the November 2013 order and

sections 4 and 5 of the January 2014 order.

 III.

 The balance of defendant's arguments involve both the

procedural aspects of the fee award to plaintiff, and the

justification for those awards. We briefly address these

contentions seriatim.

 First, defendant argues the judge erred by granting

reconsideration of the November 2013 order and entering the

January 2014 order that the denial of fees was without

prejudice. We disagree.

 Motions for reconsideration are addressed to "the sound

discretion of the Court, to be exercised in the interest of

justice." Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div.

1996) (quoting Johnson v. Cyklop Strapping Corp., 220 N.J.

Super. 250, 257 (App. Div. 1987), certif. denied, 110 N.J. 196

(1988)). Reconsideration is to be utilized narrowly, and

reserved for situations where the court relied "on plainly

incorrect reasoning," where the court failed to consider

probative, competent evidence, or where "there is good reason

 31 A-3230-14T2
for [the court] to reconsider new" evidence. Town of

Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 175

(App. Div. 2005). (emphasis omitted) (quoting Pressler, Current

N.J. Court Rules, comment on R. 4:49-2 (2005)).

Reconsideration should be exercised "in the service of the

ultimate goal of substantial justice." Casino Reinvestment Dev.

Auth. v. Teller, 384 N.J. Super. 408, 413 (App. Div. 2006)

(quoting Johnson, supra, 220 N.J. Super. at 264).

 The November 2013 order denied counsel fees without

prejudice, but the judge clearly anticipated plaintiff's counsel

would be re-submitting a fee request. As already noted, it does

not appear that defendant opposed the motion for

reconsideration. The judge did not mistakenly exercise his

discretion by entering the January 2014 order denying fees

without prejudice to plaintiff submitting a proper request.

 Defendant next contends we must reverse the award of fees

to plaintiff because she failed to comply with the governing

court rules, and the award lacked evidential support. We again

disagree.

 Counsel fees in a Family Part action are authorized by Rule

4:42-9(a)(1) and determined by application of the factors listed

in Rule 5:3-5(c). The award of fees is discretionary. J.E.V.

v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012). On appeal,

 32 A-3230-14T2
we will not reverse a decision regarding counsel fees absent a

showing of abuse of discretion involving a clear error in

judgment. Chestone v. Chestone, 322 N.J. Super. 250, 258 (App.

Div. 1999) (citation omitted).

 Here, the judge carefully considered the appropriate

factors and awarded substantially less than the $81,000

requested by plaintiff. In this regard, he found that plaintiff

had prevailed, although the case could have been "somewhat

abbreviated" and handled in a "more expeditious manner." The

judge considered plaintiff's good faith and ability to pay, as

well as defendant's ability to have employed and presumably paid

"some seven attorneys" throughout the litigation. As noted,

defendant's opposition never asserted an inability to pay.

 Next, defendant argues the judge erred in considering his

motion for reconsideration in that the order only modified the

amount of monthly payments. He contends that the tax returns

supplied in support of the motion demonstrate his inability to

pay the award, making the award punitive.

 Initially, we note that defendant could have furnished

these tax returns in opposition to plaintiff's fee request, but

choose not to do so. On reconsideration, the judge lowered the

required monthly payment, but implicitly concluded there was no

reason to lower the amount of the total award because of

 33 A-3230-14T2
defendant's temporarily depressed income. The judge did not

mistakenly exercise his broad discretion in this regard.

 Finally, defendant argues the judge erred by including a

provision in the orders that the award be non-dischargeable in

bankruptcy. He contends "[p]laintiff presented no evidence

which supported her application or warranted the entry of such

an order," and the court lacked jurisdiction, because only the

bankruptcy court could determine whether the debt was

dischargeable. We again disagree.

 The issue presents a question of law, to which we apply

plenary review. Manalapan Realty v. Twp. Comm. of Manalapan,

140 N.J. 366, 378 (1995). Whether an obligation to pay an

attorney fee award in a matrimonial action can be discharged in

the obligor's personal bankruptcy case is governed by paragraphs

5 and 15 of 11 U.S.C.A. § 523(a), which provide:

 (a) A discharge under [certain
 provisions of the Bankruptcy Code] does not
 discharge an individual debtor from any
 debt—

 . . . .

 (5) for a domestic support obligation;
 [or]

 . . . .

 (15) to a spouse, former spouse, or
 child of the debtor and not of the kind
 described in paragraph (5) that is incurred
 by the debtor in the course of a divorce or

 34 A-3230-14T2
 separation or in connection with a
 separation agreement, divorce decree or
 other order of a court of record, or a
 determination made in accordance with State
 or territorial law by a governmental unit[.]

 [11 U.S.C.A. § 523(a).]9

Federal courts have exclusive jurisdiction only over the

dischargeability exceptions named in 11 U.S.C.A. § 523(c)(1),

Floyd v. Hill, 495 B.R. 646, 654 n.4 (Bankr. D.N.J. 2013), and

neither Section 5 nor Section 15 of 11 U.S.C.A. § 523(a) are

contained therein.

 Construing a prior version of Section 5 that contained

additional limiting language, we held "Section 5 'prohibits the

discharge of a debtor's alimony, maintenance or support

obligations to his or her former spouse and children.'"

Winegarden v. Winegarden, 316 N.J. Super. 52, 59 (App. Div.

1998) (quoting Loyko v. Loyko, 200 N.J. Super. 152, 155 (App.

Div. 1985). Even under that version, state and federal courts

exercised concurrent jurisdiction to determine dischargeability

of Section 5 debts. Ibid. (citing Loyko, supra, 200 N.J. Super.

at 156).

 When we decided Winegarden, Section 15 debts were included

in the list of exceptions contained in 11 U.S.C.A. § 523(c)(1),

9
 Defendant misquotes the current version of the statute in his
brief.

 35 A-3230-14T2
and hence, such debts were within the exclusive jurisdiction of

the bankruptcy court. Id. at 59-60. In the current statute,

the combined operation of paragraphs 5 and 15 exempts from

discharge any debt to a spouse, a former spouse, or child of the

debtor that was incurred pursuant to a court order, whether or

not the debt has the nature of a "support obligation." The only

statutory criterion is that plaintiff's attorney fee award is a

debt that arose from a court order issued with regard to a

marital action. It is thus exempt from discharge as a matter of

law, and the court in this case had concurrent jurisdiction to

declare it so. See Davidson v. Soelberg, Case No. 15-01355-TLM,

2016 Bankr. LEXIS 3661 *7 (Bankr. D. Idaho 2016) (holding state

courts share with federal courts the "jurisdiction and the

ability to address dischargeability under" both Sections 5 and

15).

 For the reasons stated, we affirm in A-3230-14, except as

to those provisions of the November 2013 and January 2014 orders

which we have now vacated.

 As to A-3256-14

 Plaintiff's appeal challenges the August 2014 order, which

granted defendant reconsideration and reduced the monthly

payments on the previously-granted counsel fee award. She

argues defendant's motion was untimely and without merit, and

 36 A-3230-14T2
the judge should have denied the reconsideration motion and

granted her fees. Plaintiff also challenges the February 2015

order that denied her motion for reconsideration and awarded

defendant counsel fees for opposing the motion via an offset to

the prior counsel fee award. Plaintiff's contentions lack

sufficient merit to warrant extensive discussion in a written

opinion. R. 2:11-3(e)(1)(E). We add only the following.

 Rule 4:49-2 mandates that a motion for reconsideration

"shall be served not later than 20 days after service of the

judgment or order upon all parties by the party obtaining it."

(Emphasis added). Rule 1:3-4(c) expressly prohibits the court,

or even the parties by mutual consent, from enlarging that

period of time. See Eastampton Ctr., LLC v. Planning Bd. of

Eastampton, 354 N.J. Super. 171, 185 (App. Div. 2002). While

the party obtaining the order, here plaintiff, is obliged to

serve it upon all other parties, we have held that the time

period runs whenever opposing counsel receives a copy. See

ibid.

 Here, the judge failed to make specific findings regarding

the date defendant received the June 9, 2014 order granting

plaintiff fees, however, he implicitly accepted defendant's

certification that he did not receive it from his trial counsel

until June 16. Notably, nothing in plaintiff's opposition

 37 A-3230-14T2
papers indicates that plaintiff ever served the order, as

required by the Rule, or when the court served the order. In a

later ruling, the judge reiterated acceptance of the June 16

date. As a result, defendant's motion, filed on July 7, 2015,

was timely.10

 As to the balance of plaintiff's claims regarding the

August 2014 order, it suffices to say that the judge indulged

both sides in addressing the fee issue, strove to reach a just

result and exercised his broad discretion in serving "the

ultimate goal of substantial justice." Johnson, supra, 220 N.J.

Super. at 264.

 Regarding the February 2015 order, plaintiff contends the

judge erred by concluding her motion for reconsideration was

frivolous, and, as a result, granting defendant fees to oppose

the motion in the form of an offset against plaintiff's fee

award. She further claims the February 2015 order resulted from

"judicial bias."

 The judge's written statement of reasons amply sets forth

the excessive litigation that followed the initial award of

fees, including plaintiff's reconsideration motion, which the

judge concluded was "unreasonable," not frivolous. We agree

10
 Although July 6 was the twentieth day, it was a Sunday. See
R. 1:3-1.

 38 A-3230-14T2
entirely with that assessment. The judge's award of fees to

defendant was completely justified. Moreover, we will not

dignify plaintiff's claims of "judicial bias" with any

discussion, except to say that the judge exercised model

judicial temperament and fairness throughout these proceedings.

 Affirmed in A-3256-14.

 39 A-3230-14T2